**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| KENNETH D. MCCLURE, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 1:21-CV-20 SRW |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on review of an adverse ruling by the Social Security

Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C.

§ 405(g). The parties consented to the exercise of authority by the United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in Support of the Complaint. ECF

No. 17. Defendant filed a Brief in Support of the Answer. ECF No. 22. Plaintiff filed a Reply.

ECF No. 23. The Court has reviewed the parties' briefs and the entire administrative record,

including the transcripts and medical evidence. Based on the following, the Court will affirm the

Commissioner's decision.

**I.     Factual and Procedural Background**

On September 26, 2018, Plaintiff Kenneth McClure protectively filed an application for

supplemental security income (SSI) under Title XVI, 42 U.S.C. §§ 1381, *et seq.* Tr. 73, 153-63.

---

[1] At the time this case was filed, Andrew M. Saul was the Commissioner of Social Security. Kilolo Kijakazi became the Commissioner of Social Security on July 9, 2021. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name, and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Kilolo Kijakazi for Andrew M. Saul in this matter.

Plaintiff's application was denied on initial consideration. Tr. 78-83. On February 18, 2019, he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 85-87.

Plaintiff appeared for a hearing on January 24, 2020. Tr. 27-56. Plaintiff testified concerning his disability, daily activities, functional limitations, and past work. *Id*. A vocational expert ("VE") was present at the hearing; however, the ALJ did not require her to testify. *Id*. at 55. Subsequently, the ALJ submitted a Request for Vocational Interrogatory to VE Jenifer Sara LaRue. Tr. 254-62. On June 4, 2020, Ms. LaRue returned a Response to the ALJ, and a copy was provided to Plaintiff's representative. Tr. 263-68, 270.

On July 10, 2020, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 7-25. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 150-52. On December 4, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.    Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy[.]" §

1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the

claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the

claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is

not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see whether the claimant has a severe impairment "which significantly limits claimant's

physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th

Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts

only to a slight abnormality that would not significantly limit the claimant's physical or mental

ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also*

20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the

impairment's medical severity. If the impairment meets or equals one of the presumptively

disabling impairments listed in the regulations, the claimant is considered disabled, regardless of

age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the

presumptively disabling impairments, the Commissioner assesses whether the claimant retains

the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§

416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do

despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir.

2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant

3

evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is

4

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since the application date of September 26, 2018.[2] Tr. 12. Plaintiff has the severe impairments of "lumbar degenerative disc disease; degenerative joint disease in the right hip and right knee; seizures; obesity; and generalized anxiety disorder." Tr. 12-13. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 13-15. The ALJ found Plaintiff had the following RFC through the date last insured:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. The [Plaintiff] is able to stand and/or walk for 6 hours of an 8-hour workday and sit for 6 hours of an 8-hour workday. The [Plaintiff] can occasionally climb, stoop, kneel, crouch, and crawl. The [Plaintiff] must avoid workplace hazards, such as dangerous machinery or unprotected heights. The [Plaintiff] is able to perform simple and routine tasks in a non-public work setting

---

[2] Plaintiff initially alleged an onset date of July 1, 2002, but later submitted an amendment changing the onset date to September 26, 2018. *See* Tr. 184.

where he would not be required to communicate or interact with the general public.

Tr. 15. The ALJ found Plaintiff is unable to perform any past relevant work. Tr. 18. The ALJ further found Plaintiff was born on July 15, 1980 and was 38 years old, which is defined as a younger individual age 18-49, on the date the application was filed. Tr. 18. Plaintiff has at least a high school education and is able to communicate in English. *Id.*

The ALJ determined the transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferrable job skills. *Id.* Relying on the VE's interrogatory responses and considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs existing in significant numbers in the national economy which the Plaintiff could perform, including representative occupations such as merchandise marker (*Dictionary of Occupational Titles* ("*DOT*") No. 209.587-034, with approximately 199,352 positions nationally), electrical assembler (*DOT* No. 729.687-010, with approximately 96,357 positions nationally), and garment sorter (*DOT* No. 222.687-014, with approximately 63,227 positions nationally). Tr. 18-19. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, since September 26, 2018, the date his application was filed. Tr. 19

## IV. Discussion

Plaintiff argues the ALJ's decision was not supported with substantial evidence because the "ALJ failed to properly consider [his] testimony and provide sufficient reasons for discounting his allegations concerning the frequency and intensity of his mental health

symptoms."[3] ECF No. 17 at 2. In presenting this argument, Plaintiff asserts the ALJ improperly relied on his lack of psychiatric hospitalizations and mischaracterized the record by describing his mental health symptoms to be "typically stable." *Id.* at 3-7. Plaintiff further argues the ALJ erred by finding the Mental Medical Source Statement ("MSS") opinion of his treating provider, Nurse Practitioner Wanda Horn, not persuasive, and the Mental RFC opinion of non-examining State agency psychologist, Dr. Barbara Markway, persuasive. *Id.* at 7-9.

In response, the Commissioner contends the ALJ properly evaluated Plaintiff's subjective statements by utilizing the factors laid out in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) to determine the record was not consistent with his reports of debilitating mental health symptoms. The Commissioner cites to treatment notes in which Nurse Horn described Plaintiff to be cooperative, friendly, and responsive to his medications when taken as prescribed, thus, contradicting the extreme limitations she opined in her MSS. The Commissioner also highlights instances in the record where Plaintiff reported his symptoms to be stable and improving. Additionally, the Commissioner asserts the ALJ appropriately reviewed the record to determine the persuasiveness of Nurse Horn and Dr. Markway's opinions.

In formulating Plaintiff's mental RFC, the ALJ considered his statements concerning the intensity, persistence, and limiting effects of his symptoms and found they were not entirely consistent with the medical evidence and other evidence in the record. The ALJ explained:

> As for the claimant's pseudo-seizures and mental symptoms, the claimant has admitted that they respond well to medication, and the overall evidence suggests these symptoms are no more than moderate. The undersigned observed the claimant as he testified and noted that he had visible shaking and tremors, yet the

---

[3] Plaintiff limits his arguments to the ALJ's evaluation of his mental impairments only. He does not contest the ALJ's RFC evaluation of his physical impairments. Although the Court has reviewed the underlying record in its entirety, the Court will limit its discussion to the ALJ's RFC assessment of Plaintiff's mental impairments only. *See, e.g., Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010) (noting plaintiff's failure to raise specific claims in a social security brief constitutes a waiver of any such unaddressed claims).

claimant has not required a psychiatric hospital admission during the relevant period, which supports that his mental symptoms are typically stable. Thus, the record supports that the claimant would be capable of performing work in some capacity if he is able to perform work with no public contact.

Tr. 16.

The ALJ then summarized the relevant underlying medical and opinion evidence. On July 11, 2018, Plaintiff presented to neurologist, Dr. Shahid Choudhary, to determine whether he was experiencing seizures. Tr. 16, 306. Plaintiff reported one to four episodes per month since he was a teenager and attributed them to stress. *Id*. Plaintiff described his episodes as a headache, shaking and jerking in his extremities, followed by loss of consciousness. *Id*. He stated he would sometimes bite his tongue and lose control of his bladder. *Id*. Plaintiff confirmed he was prescribed Klonopin[4] and it helped. *Id*. Plaintiff also described symptoms of depression and anxiety, which he stated would worsen prior to his episodes. *Id.* Upon physical examination, Dr. Choudhary did not believe he was in any acute distress, but noted he appeared "very anxious and nervous" and would not allow her to close the door. Tr. 307. Dr. Choudhary thought it was possible his episodes were related to stress and anxiety, but it was also possible they were epileptic seizures or benign essential tremors related to stress. Tr. 308. Plaintiff told Dr. Choudhary he was previously accused of faking his episodes. *Id.*

From August 6, 2018 through August 9, 2018, Plaintiff presented to Saint Francis Medical Center for EEG and video monitoring. Tr. 312-13. Plaintiff's antiepileptic medications were tapered down to better observe his episodes. *Id*. During observation, Plaintiff had three episodes of unresponsiveness with body shaking, no epileptiform EEG correlate, normal interictal EEG, and no epileptiform discharges. Tr. 313. These results were found to be

---

[4] Clonazepam (brand name Klonopin) is used to control certain types of seizures and to relieve panic attacks (sudden, unexpected attacks of extreme fear and worry about these attacks). *MedlinePlus*, available at https://medlineplus.gov/druginfo/meds/a682279.html (last visited June 8, 2022).

"consistent with a diagnosis of psychogenic nonepileptic events." Tr. 16, 313. Plaintiff was discharged and directed to follow up with his neurologist as well as psychiatry and counseling. Tr. 313.

On November 21, 2018, Plaintiff appeared to his neurologist, Dr. Chaudhry, as instructed. Tr. 308-09. He reported "doing better" and having fewer episodes since he started seeing Nurse Wanda Horn, a psychiatric nurse practitioner. Tr. 308. Dr. Chaudhry informed Plaintiff that based on the EEG and monitoring results, his episodes were not epileptic seizures. Tr. 309. He was directed to continue seeing Nurse Horn, but he would need no further appointments with neurology. *Id.*

On December 6, 2019, Nurse Horn completed and submitted an MSS on behalf of Plaintiff. Tr. 17-18, 618-22. Nurse Horn listed Plaintiff's mental diagnoses as schizoaffective-bipolar type general anxiety disorder, post-traumatic stress disorder ("PTSD"), and insomnia. Tr. 618. She checked the "extremely limited" box for all areas of mental functioning, including understanding and memory, sustained concentration and persistence, social interaction, and adaption. Tr. 618-19. She also checked the "extremely impaired" box to describe his ability to perform all work-related functions. Tr. 621-22. In the "comments" section, Nurse Horn wrote: "The patient has problems severe enough that he has to be allowed to sit in a private area until seen – unable to cope with noise and people in the waiting area." Tr. 622.

The ALJ found Nurse Horn's MSS to be unpersuasive. Tr. 17-18. In making this determination, the ALJ explained:

> The undersigned notes that Ms. Horn's findings are extreme in light of the claimant's longitudinal mental health treatment history and mental status examination findings. The claimant has admitted that his psychotropic medications generally work well for him, and the record supports that his symptoms are stable if he is able to avoid crowds of people. Thus, Ms. Horn's

9

opinion is not consistent with the overall record, including the state agency opinion[.]

Tr. 18.

The Court's review of the underlying record demonstrates that Plaintiff established care with Nurse Horn on October 1, 2018. Tr. 326-28. During this initial visit, she described Plaintiff's primary diagnosis as schizoaffective disorder, bipolar type, with secondary diagnoses of PTSD, generalized anxiety disorder, and insomnia. Tr. 326. Nurse Horn noted he had poor eye contact and his right arm and leg shook so much that his blood pressure had to be taken on the other arm. Tr. 327-28. She indicated he complained of hallucinations and paranoia, but denied suicidal thoughts. Tr. 328.

On October 15, 2018, Plaintiff followed up with Nurse Horn for medication management. Tr. 324-25. Plaintiff reported insomnia, low energy, anxiety, and difficulty concentrating, but believed he was "better overall." Tr. 324. He denied any symptoms of excessive sleeping, loss of interest in activities, frequent crying, memory loss, hallucinations, or suicidal thoughts. *Id.* Plaintiff stated his Latuda[5] prescription was "working," but he requested an increased dosage. *Id.* Upon physical examination, Nurse Horn described Plaintiff's mood to be "happy," noticed he maintained normal eye contact, was "calm/relaxed," and exhibited normal memory and a cooperative and friendly nature. *Id.*

On November 20, 2018, Plaintiff appeared to Nurse Horn for a follow up appointment. Tr. 322-23. Plaintiff described difficulties sleeping, but he denied loss of energy and reported "normal" concentration, which Nurse Horn indicated to be an improvement from the last visit.

---

[5] Lurasidone (brand name Latuda) is used to treat the symptoms of schizophrenia and depression with bipolar disorder. *MedlinePlus*, available at https://medlineplus.gov/druginfo/meds/a611016.html (last visited June 9, 2022).

Tr. 322. He continued to deny hallucinations and suicidal thoughts. *Id.* Plaintiff reported "good results with Latuda and no side effects other than feeling hungry." *Id.*

On May 22, 2019, Nurse Horn indicated his depression was "not as bad as in the past." Tr. 639. She further wrote that his ability to concentrate had improved so much that "he [was] able to play some video games," which he could not do for three to four years. *Id.* Plaintiff again confirmed his medications were "helpful" and denied side effects. On October 2, 2019, Plaintiff told Holly Reed, CNP that he was seeing Nurse Horn for his anxiety and was "doing well." Tr. 548.

On October 10, 2019, Plaintiff appeared to Nurse Horn. Tr. 629. Plaintiff complained of insomnia and stated, "he stays home so he doesn't flip out on people" and only leaves to visit with doctors. *Id.* However, Plaintiff denied any loss of interest in daily activities or energy, feelings of helplessness or hopelessness, or suicidal ideations. *Id.* His concentration was described to be "normal," and he denied any issues recalling information, thinking, or making decisions. *Id.* Nurse Horn observed that he appeared restless and extremely nervous with a depressed mood, but was cooperative, spoke at a normal rate and volume, exhibited good insight and judgment, and had a normal attention span and concentration. Tr. 630-31.

On November 25, 2019, Plaintiff informed Nurse Horn that he was recently unable to take his Klonopin as directed because the pharmacy accidently gave him half of a script. Tr. 627. As a result, Plaintiff described an increase of mental health symptoms. *Id.* Despite the temporary setback due to the pharmacy issue, both Plaintiff and his wife expressed to Nurse Horn that "the medication is helpful and when he is taking them he is much better than he has been in a long time." *Id.*

11

One month later, emergency medical services were dispatched to Plaintiff's home due to complaints of chest pain and pressure. Tr. 662. However, once the first responders arrived, Plaintiff reported the pressure had subsided, and he declined transport to the hospital. *Id.* On December 30, 2019, Plaintiff told Nurse Horn he had some improvement with his symptoms of depression. Tr. 625. He once again reported his "current medication is helpful and denies side effects." *Id.* Upon physical examination, Nurse Horn described normal eye contact and speech, a cooperative and friendly mood, and no issues with recent and remote memory. *Id.*

On January 3, 2019, State agent psychologist, Dr. Markway, reviewed Plaintiff's activities of daily living, history of medication, and longitudinal treatment records. Dr. Markway opined he had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. Tr. 63-65, 67-69. Dr. Markway found Plaintiff's statements regarding his symptoms to be partially consistent with the total medical and non-medical evidence. Tr. 65. He believed Plaintiff could perform simple, repetitive tasks away from the general public. Tr. 70.

The ALJ found Dr. Markway's opinion to be "generally persuasive." Tr. 17. In making this determination, the ALJ explained in pertinent part:

> [The state agency evaluator opinion] is supported with a good explanation and citations to the objective medical evidence. The undersigned finds that the state agency evaluator opinion of less than marked mental symptoms with the need to work in an environment away from the general public is consistent with the claimant's longitudinal mental health treatment history, the claimant's statements, and his mental status examination findings.

*Id*.

An ALJ's factual findings are conclusive if supported by "substantial evidence." 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's

12

factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, (1938)). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "'more than a mere scintilla.'" *Id.* "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* If the Court finds the evidence supports two inconsistent positions and one of those positions represents the Commissioner's findings, the Court must affirm the Commissioner's decision. *See Bagwell v. Comm'r of Soc. Sec.*, 916 F.3d 1117, 1119 (8th Cir. 2019). The Eighth Circuit has held that the district courts should "'defer heavily to the findings and conclusions of the Social Security Administration.'" *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010)).

Plaintiff argues this matter should be remanded because the ALJ failed to provide detailed reasons for discounting his statements concerning the frequency and intensity of his mental health symptoms. Plaintiff cites to SSR 16-3p, which requires the ALJ to give "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Soc. Sec. Admin., Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017).

When evaluating a claimant's subjective complaints, the ALJ considers several factors, including but not limited to "prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir.

13

2021) (quoting *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010)); *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Objective medical evidence is also considered, but "the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence." *Id.* (citation omitted). The "ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citation omitted). A reviewing court normally defers to an ALJ's credibility determination as long as the ALJ "explicitly discredits the claimant's testimony and gives good reasons for doing so." *Halverston*, 600 F.3d at 932.

To the extent Plaintiff argues the ALJ erred by failing to include a discussion of the statements he made in his application for benefits or in the hearing, the Court does not find reversible error. "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). Significantly, to the contrary of Plaintiff's argument, the ALJ explicitly indicated that his allegations and testimony were considered in formulating the RFC. *See* Tr. 18 ("After thorough review of the evidence of record including the claimant's allegations and testimony, forms completed at the request of Social Security, . . . the undersigned finds the claimant capable of performing work[.]").

The Court also cannot find that the ALJ failed to provide an analysis of Plaintiff's subjective reports. The ALJ considered Plaintiff's comments to Nurse Horn that he suffered from flashbacks and preferred to stay home to avoid "flipping out" on people. Tr. 17. The ALJ considered observations from his medical providers who described him as visibly nervous, anxious, and shaking, and recognized that on at least one occasion he did not want the treating

14

provider to shut the examination door. *Id.* The ALJ took into account and cited to the record where Plaintiff confirmed his medications and therapy were effective in reducing his symptoms. *Id. See, e.g.*, Tr. 322 (reported good results with Latuda and denied side effects other than increased appetite), Tr. 324 (reported effectiveness of Latuda and requested a dosage increase), Tr. 554 (stated he was doing well), Tr. 627 (reported the effectiveness of Klonopin and stated he was "much better than he has been in a long time."). Plaintiff also testified during the hearing that his medications "help tremendously." Tr. 35. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Mabry v. Colvin*, 815 F.3d 368, 391-92 (8th Cir. 2016). *See also* 20 C.F.R. § 404.1529(c)(3)(iv) (explaining the agency considers the "effectiveness" of medication when evaluating symptoms).

There is also substantial evidence within the underlying record to support the ALJ's conclusion that his mental health symptoms were "typically stable." Tr. 16-17. *See, e.g.*, Tr. 368 (reporting his "anxiety is stable" on October 17, 2018 – one month after his alleged onset date), Tr. 558 (reporting his symptoms of anxiety to be "stable" on April 4, 2019); Tr. 635 (treatment notes state he "feels stable on current psych meds"). The record reflects multiple instances of stable symptoms, improvement, and medication effectiveness. *See* Tr. 306, 310, 312, 363, 410, 422, 431, 435, 558, 573, 577, 580, 597, 600, 604, 607, 625, 627, 632, 639, 641, 643, 645, 647. Thus, the ALJ cannot be said to have relied solely on Plaintiff's lack of psychiatric in-patient hospitalizations to find Plaintiff not disabled. *See Tyman v. Colvin*, 2014 WL 467517, at *10 (W.D. Mo. Feb. 6, 2014) (ALJ can consider lack of inpatient hospitalizations as a factor in determining RFC).

Plaintiff cites to several treatment notes to support his argument that his symptoms were not stable. However, the Court notes his increased symptoms oftentimes coincided with a lapse

in medication. For example, in December 2018, Nurse Horn observed Plaintiff to be shaking and described him as depressed and anxious, but Plaintiff had been out of medication for five or six days. Tr. 647. In June 2019, Plaintiff reported he was hearing voices, but Plaintiff had been out of medication for four days. Tr. 638. In November of 2019, Nurse Horn noted Plaintiff was very anxious and shaking all over, but Plaintiff admitted he had been unable to take Klonopin due to a pharmacy error. Tr. 627. Contrary to Plaintiff's position, these records support the ALJ's finding that Plaintiff's psychotropic medications were effective in reducing his mental symptoms. "[I]f it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. *Cruse v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996); *Clark v. Chater*, 75 F.3d 414, 416-17 (8th Cir. 1996).

Lastly, Plaintiff takes issue with the ALJ's determinations finding Nurse Horn's opinion unpersuasive and Dr. Markway's opinion persuasive. The new Social Security regulations regarding the evaluation of medical opinion evidence apply to Plaintiff's case because he filed his application after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Under these regulations, an ALJ is no longer required to "give any specific evidentiary weight, including controlling weight to any medical opinion(s)," including those from treating physicians. 20 C.F.R. § 404.1520c(a). Rather, the ALJ must evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(a)-(c).

The ALJ must explain how he considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a medical source's medical opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2). The ALJ

16

must explain in his decision how persuasive he finds a medical opinion or a prior administrative medical finding based on these two factors. *Id.* The ALJ may, but is not required to, explain how he considered the other remaining factors, unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. § 404.1520c(b)(3).

The Commissioner's regulations explain, as to the supportability factor, "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1) (2017). In other words, an opinion is more persuasive if it presents more relevant objective medical evidence and explanatory rationale in support of the opinion. As to the consistency factor, "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2) (2017). Stated more simply, an opinion is more persuasive if it is more consistent with the overall evidence as a whole.

In December of 2019, Nurse Horn submitted an MSS. Tr. 618-22. She opined Plaintiff had extreme limitations in all areas of mental functioning. The only written support she offered was that Plaintiff needed a private waiting room for appointments because of intolerance for noise and people. Tr. 622. The ALJ considered the opinion and found it to lack adequate supporting explanations for the extreme limitations, and inconsistent with his mental health treatment history, mental status examination findings, psychotropic medication effectiveness, and self-reported stable symptoms. Tr. 18.

The Court finds the ALJ properly considered Nurse Horn's medical opinion, and appropriately addressed why the MSS was not supported by or consistent with the record, including her own treatment notes. As discussed above, Plaintiff consistently reported to Nurse Horn that his medications were helpful and his symptoms were stable or improved when he took his prescriptions as directed. *See* Tr. 306, 310, 312, 363, 410, 422, 431, 435, 558, 573, 577, 580, 597, 600, 604, 607, 625, 627, 632, 635, 639, 641, 643, 645, 647. Medication effectiveness does not support Nurse Horn's marked limitations.

Moreover, the limitations listed on her MSS "were never mentioned in the physician's numerous records of treatment nor supported by any objective testing or reasoning." *Adkins v. Commissioner*, 911 F.3d 547, 550 (8th Cir. 2018) (holding ALJ did not err in discounting treating physician's MSS when contrasted to said physician's treatment records that did not actually corroborate the checkbox conclusions of the MSS). Nurse Horn checked the boxes for extreme limitations in understanding, memory, and concentration. ECF No. 618-19. However, her treatment notes overwhelmingly showed improvement or a lack of complaints in those areas of functioning. *See* Tr. 322 (concentration normal with some improvement); Tr. 625 (normal attention span and concentration upon physical examination); Tr. 627 (concentration described to be normal); Tr. 629 (denied difficulty concentrating or issues with making decisions or remembering information); Tr. 631 (normal attention span and concentration upon physical examination); Tr. 632 (normal memory and concentration); Tr. 637 (same); Tr. 639 (reported significant improvement with concentration and the ability to play video games); Tr. 641 (normal memory and concentration); Tr. 643 (same).

Additionally, Nurse Horn opined in her MSS that Plaintiff would not be able to adhere to the basic standards of neatness and cleanliness. However, she regularly described Plaintiff as

18

clean, groomed, and dressed appropriately. *See* Tr. 625, 627, 630, 632, 637, 639, 641, 643, 645, 647, 651. Nowhere in the record does Nurse Horn note any concern for his appearance. Similarly, she opined in her MSS that he would have marked limitations in his ability to adapt socially; however, her treatment notes regularly described him as "friendly," "cooperative," and appearing with an "appropriate mood and affect." *See* Tr. 324, 328, 625, 627, 630, 632, 641, 643, 645, 647, 651.

The Court also finds that the ALJ appropriately considered Dr. Markway's opinion as persuasive. To the extent Plaintiff argues a non-examining physician's opinion may not be considered substantial evidence, such a position is incorrect. "[T]he new regulations require the ALJ to consider the opinions of state agency medical consultants because they are highly qualified and experts in Social Security disability evaluation." *Morton v. Saul*, 2021 WL 307552, at *8 (E.D. Mo. Jan. 29, 2021) (citing 20 C.F.R. § 404.1513a). "The ALJ's reasonable reliance on an opinion from a highly qualified expert is within the zone of choice." *Id.* (citing *Biestek*, 139 S. Ct. at 1154). Thus, Dr. Markway's opinion can be substantial evidence under the new regulations as long as the ALJ considers the supportability and consistency factors.

The ALJ in this case explicitly evaluated the supportability and consistency of Dr. Markway's opinion. The ALJ determined Dr. Markway's opinion was "supported with a good explanation and citations to the objective medical evidence" and "consistent with the claimant's longitudinal mental health treatment history, the claimant's statements, and his mental health status examination findings." Tr. 17. Therefore, the ALJ clearly considered the supportability and consistency factors.

Plaintiff additionally takes issue with the ALJ's reliance on Dr. Markway's opinion because Plaintiff's file was incomplete at the time of review and only contained two of the

19

treating records from Nurse Horn. Despite this argument, nothing in the Social Security regulations requires a report to be within a certain time frame for an ALJ to rely on it. *See Gallup v. Saul*, 2020 WL 5107282, at *4 (E.D. Mo. Aug. 31, 2020). "Because state agency review precedes ALJ review, 'there is always some time lapse between the consultant's report and the ALJ hearing and decision.'" *Hildreth v. Saul*, 2020 WL 5517588, at *8 (E.D. Mo. Sept. 14, 2020) (quoting *Chandler v. Comm'r of Social Sec.*, 667 F.3d 356, 361 (3d Cir. 2011)) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."). Nor does legal authority require a consultant's medical opinion to be based on subsequently created medical records for an ALJ to rely on it. *Barker v. Colvin*, 2015 WL 4928556, at *1 (W.D. Mo. Aug. 18, 2015) ("[T]he Court is not aware of any legal authority which holds a consultant's medical opinion must be based on subsequently created medical records, or that the consultant's opinion must necessarily be discounted because it is not based on those records.").

As discussed above, the ALJ considered the entirety of the record, including Nurse Horn's treatment records and MSS, which were created subsequent to Dr. Markway's RFC Assessment. The RFC is supported by substantial evidence because it is consistent with his mental health treatment history; his statements regarding medication effectiveness, symptom stability, and improvement; and mental status examination findings regularly describing him to be friendly and cooperative with a normal mood and effect. Dr. Markway reviewed Nurse Horn's records establishing care with Plaintiff and his initial diagnoses, which did not change over the course of treatment. Tr. 326-28, 618-22. Thus, the ALJ's reliance on Dr. Markway's opinion was proper.

For the above-stated reasons, this Court finds substantial evidence in the record as a whole supports the ALJ's RFC determination, and the ALJ provided sufficient reasons for discrediting Plaintiff's subjective complaints.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Kenneth D. McClure's Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Kilolo Kijakazi for Andrew M. Saul in the court record of this case.

So Ordered this 9th day of June, 2022.

STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE